# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TIMOTHY MANCE, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-17-2222 |
| OWINGS MILLS AUTOS, LLC, | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * *

## MEMORANDUM

Plaintiff Timothy Mance brought this action against Defendant Owings Mills Autos, LLC, on August 7, 2017, alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't § 20-601 *et seq.* (*See* Compl., ECF No. 1.) Defendant moved to dismiss or in the alternative for summary judgment on October 30, 2017. (Mot. Summ. J., ECF No. 7.) Plaintiff responded in opposition (ECF No. 10) and, on January 5, 2018, Defendant replied (ECF No. 13), and simultaneously moved to strike an affidavit attached to Plaintiff's opposition (Mot. Strike, ECF No. 14). Plaintiff responded in opposition to the motion to strike (ECF No. 15) and Defendant replied (ECF No. 17). Plaintiff then moved for leave to file a surreply. (Mot. Surreply, ECF No. 21.) Defendant responded in opposition (ECF No. 23) and the time for Plaintiff to reply has passed. Therefore, all three motions are ripe for review. There is no need for a hearing to resolve any of the pending motions. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, Defendant's

motion to dismiss, construed as a motion for summary judgment, will be granted by accompanying order, and Defendant's motion to strike as well as Plaintiff's motion for leave to file a surreply will be denied as moot by accompanying order.

## I. *Background*[1]

Timothy Mance began working at Driftwood Inc. d/b/a Northwest Honda ("Northwest Honda") as a salesperson in February 2006. (Aff. Timothy Mance ¶ 1, ECF No. 10-1.) Plaintiff worked as a "car salesperson" and then a "Used Car Manager." (*Id.* ¶ 3.) In 2016, Northwest Honda was sold to Defendant. (*See id.* ¶ 2; Aff. Nancy Theodore ¶ 5, p. 2, ECF No. 7-10.[2]) Under the terms of the Asset Purchase Agreement ("APA") signed by Northwest Honda and Defendant's representatives, "[o]n the Closing Date, Seller [i.e. Northwest Honda] will transition the employment of all Seller's employees with respect to the Business, except for [two employees] in a manner approved in advance by Buyer [i.e. Defendant]." (APA § 8, ECF No. 10-3.) According to the APA, "Buyer shall hire all of Seller's former employees . . . in accordance with Buyer's standard operating and human resources procedures." (*Id.*) The APA defined the employees of Northwest Honda hired by Defendant as "Retained Employees" and explained that "Buyers shall have the right, but not the obligation, to employ any or all of Seller's employees related to the Business, and shall have no obligation to retain any Retained Employees for a specific time period following Closing." (*Id.*) Closing of the sale occurred on July 12, 2016. (Theodore Aff. ¶ 5, p. 2.)

"Prior to Closing [the sale between Northwest Honda and Defendant], virtually every employee working at Northwest Honda submitted an Application for Employment package to

---

[1] For reasons set forth below, the Court will construe Defendant's motion to dismiss as a motion for summary judgment and therefore these facts, and the inferences to be drawn from them, are taken in the light most favorable to Plaintiff, who is the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

[2] Ms. Theodore's affidavit has two paragraph "5"s, one on page one, and another on page two.

2

[Defendant]." (Theodore Aff. ¶ 11.)  Plaintiff filled out an Application packet in June 2016 and gave it to "what is now Defendant's Human Relations department." (Mance Aff. ¶ 5.)  Roughly six weeks before closing, Defendant's president told Plaintiff that he was "'not going to make any dramatic changes' and 'you will still be manager.'" (*Id.* ¶ 6.)  According to Ms. Theodore, Plaintiff "*never* submitted any Application for Employment to [Defendant] at any time." (Theodore Aff. ¶ 12 (emphasis in the original).)  According to her, "every new and used car salesperson" at Northwest Honda besides Plaintiff completed and submitted an Application. (*Id.* ¶ 17.)

The day the sale was finalized, Jon Orofino, an employee of Defendant, "fired" Plaintiff and told him "they just don't want you as manager." (Mance Aff. ¶ 8.)  Plaintiff responded by asking if he "could work in sales" but Mr. Orofino "mocked [him], suggesting places for [Plaintiff] to sit that were far from the front door." (*Id.*)  Plaintiff was confused and spoke with Defendant's management, who told him "please give us enough time to finish the paperwork and I will get back to you." (*Id.* ¶ 9.)  The following day, Plaintiff "had a meeting with Defendant." (*Id.* ¶ 11.)  At the meeting, Defendant's Vice President, Mr. Abbas, said that "I have heard great things about you, but I don't think Josh . . . had time to train you well so you can't stay as manager." (*Id.*)[3]  After Plaintiff inquired about his "status as a salesman," Abbas responded "how about you find someplace else to sit." (*Id.* ¶ 12.)  Plaintiff "refused to return to [his] previous position in Sales, [and his] employment was terminated." (Charge of Discrimination, ECF No. 7-9.)[4]  Plaintiff now works for Driftwood "in their BMW dealership" but he "would rather had [sic] stayed selling Hondas than BMWs, because my clientele that I built up cannot

---

[3] Plaintiff's affidavit does not identify Mr. Abbas by position, but his complaint does. (*See* Compl. ¶ 16.)

[4] In Plaintiff's affidavit he does not state that he refused to work as a salesman, rather he states that "Defendant terminated [him], then stated that if [he] were to come back, [he] would have to sit way in a corner away from the sales floor." (Mance Aff. ¶ 20.)  Whether Plaintiff "refused" to work as a salesman," declined an implicit offer to work as a salesman, or neither, is not entirely clear.  What is, is that Plaintiff does not work for Defendant.

3

afford BMWs." (*Id.* ¶ 18.) (According to Defendant, Plaintiff was never hired as a manager or salesperson, and the "only reason [Defendant] did not hire [Plaintiff] was because he *never* submitted any Application for Employment." (Theodore Aff. ¶ 23 (emphasis added).))

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on July 25, 2016. (*See* Charge of Discrimination; Mance Aff. ¶ 14 (referring to Charge of Discrimination).) In it, Plaintiff alleged that he had been the Used Car Manager for "approximately two months" when "Abbus [sic], the GM, informed [him] of [Defendant's] intention to remove [Plaintiff] as Manager." (Charge of Discrimination.) Plaintiff believed that he was "terminated due to [his] race, Black." (*Id.*) Plaintiff presumably was issued a notice of right to sue,[5] and brought suit in this Court on August 7, 2017. His complaint contains two counts of violations of Title VII, for "Racial Discrimination" and a "Hostile and Abusive Working Environment." (Compl. ¶¶ 23-28.) His complaint also contained a third count for "Racial Discrimination" in violation of FEPA.

On October 30, 2017 Defendant moved to dismiss Plaintiff's complaint under Rule 12(b)(6) or for summary judgment "in the alternative." (ECF No. 7.) Plaintiff responded in opposition on December 1, 2017, and attached several exhibits to his opposition, including an Affidavit by Joshua Dreiband ("Mr. Dreiband"), co-owner of Northwest Honda, and son of Edward Dreiband, also a co-owner of Northwest Honda. (Opp'n Mot. Summ. J., ECF No. 10; Aff. Joshua Dreiband, ECF No. 10-2; *see* Aff. Edward Dreiband, ECF No. 17-1.) On January 4, 2018, Mr. Dreiband signed an amended affidavit. (*See* Am. Aff. Joshua Dreiband, ECF No. 16-1.) According to Mr. Dreiband, his original affidavit had been "prepared by Plaintiff's counsel" and although he signed that original affidavit, he had not at the time of signing "see[n] or

---

[5] Plaintiff did not specifically allege that he was issued a right to sue letter, but did allege that that the Court has jurisdiction "pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 200[0]e-16" (Compl. ¶ 2), and Defendant has not challenged the Court's subject-matter jurisdiction.

4

review[ed] the final draft." (Dreiband Am. Aff. ¶ 1.) Having now "had the opportunity to review the final draft" he wished "to correct some of the content in order to make it accurate." (*Id.*) It is unclear when this amended affidavit was provided to Plaintiff or Plaintiff's counsel, but it was not docketed until January 19, 2018, fifteen days after Mr. Dreiband signed it.

On January 5, 2018, the day after Mr. Dreiband signed his amended affidavit, Defendant filed its timely reply in support of its motion to dismiss or in the alternative for summary judgment. (Reply, ECF No. 13.) Defendant simultaneously filed a motion to strike the original affidavit of Mr. Dreiband. (Mot. Strike, ECF No. 14.) Plaintiff responded in opposition to the motion to strike on January 19, 2018 (Opp'n Mot. Strike, ECF No. 15), and simultaneously filed a "Line Re: Corrected Affidavit of Joshua Dreiband," (ECF No. 16) and attached Mr. Dreiband's amended affidavit. Defendant replied in support of its motion to strike the original affidavit on February 2, 2018 (Reply Mot. Strike, ECF No. 17) and attached an Affidavit of Edward Dreiband, Mr. Dreiband's father.

This was not enough for the Plaintiff. He filed a motion for leave to file a surreply in opposition to Defendant's motion to strike on February 15, 2018. (Mot. Surreply, ECF No. 21.) Defendant responded in opposition on February 27, 2018 (ECF No. 23), and Plaintiff did not reply. Accordingly, Defendant's motion to dismiss or in the alternative for summary judgment, Defendant's motion to strike Mr. Dreiband's affidavit, and Plaintiff's motion for leave to file a surreply are all ripe for decision.

The Court will treat Defendant's motion to dismiss as one for summary judgment. Under Rule 12(d) a Court may convert a motion to dismiss to one for summary judgment and consider matters outside the pleadings, but the parties must "be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When, however, "the

movant expressly captions its motion 'in the alternative' as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court 'does not have an obligation to notify parties of the obvious.'" *Pevia v. Shearin*, Civ. No. ELH-13-2912, 2015 WL 629001, at *3 (D. Md. Feb. 10, 2015) (quoting *Laughlin v. Metro Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998)). Defendant here captioned its motion as one for summary judgment "in the alternative" and Plaintiff took the hint: he attached exhibits and affidavits to his opposition. Therefore, the Court is satisfied that Plaintiff had proper notice and it will construe the motion as one for summary judgment.[6] The Court will now turn to the standards for the several motions pending before it.

## II. *Standards*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be

---

[6] The Court will briefly note that Plaintiff's occasional complaints that Defendant's motion is simply an attempt to prevent discovery does not impact the Court's decision to construe the motion as one for summary judgment. "[T]he nonmoving party cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery or moved for a continuance to permit discovery before the district court ruled." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954 (4th Cir. 1996). Plaintiff here did not move for a continuance, and he did not make a serious "attempt to oppose the motion on the grounds that more time was needed for discovery." In the introduction to his Opposition, he suggests that this "very early motion for summary judgment is an attempt to prevent Plaintiff from taking discovery," but does not make any substantive, discovery related arguments in the body of his opposition. (Opp'n Mot. Summ. J. at 2.) He does not point to any specific issues where he is potentially prejudiced by his inability to compel the production of information. Occasional gripes about Defendant's potential motives—littered throughout Plaintiff's papers, but nowhere solidified into an actual *argument*—do not change the Court's calculus that summary judgment is appropriate.

denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

In fact, "a court may strike portions of affidavits that lack personal knowledge, contain hearsay, or rest upon conclusory statements." *Contracts Materials Processing, Inc. v. Kataleuna GmbH Catalysts*, 164 F. Supp. 2d 520, 527 (D. Md. 2001) (citing *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996)); *see* Fed. R. Civ. P. 56(c)(2). "Generally, an affidavit filed in opposition to a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court." *Evans*, 80 F.3d at 962 (citing former Fed. R. Civ. P. 56(e)). If material in an affidavit is in contravention of Rule 56(c), i.e. it would not be permissible for the affiant to so testify in court, the Court need not, and should not, strike the entire affidavit. In *Evans*, "[t]he district judge did not strike the entire affidavit and did not grant all of [the defendant's] requests to strike, but instead struck and disregarded only those portions it deemed inadmissible or improper in accordance with [former] Rule 56(e) [now Rule 56(c)]." *Id.*

As for Plaintiff's motion for leave to file a surreply, "[s]urreplies are highly disfavored in this District," and may only be filed with the Court's permission. *Roach v. Navient Solutions, Inc.*, 165 F. Supp. 3d 343, 351 (D. Md. 2015) (citing Local Rule 105.2(a)). Surreplies, however, "may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003).

### III.  *Analysis*

The Court will first address Defendant's motion for summary judgment, and then turn to the Defendant's motion to strike and Plaintiff's motion for leave to file a surreply.

#### a.  *Motion for Summary Judgment*

"A plaintiff is master of his case." *Koziara v. BNSF Railway Co.*, 840 F.3d 873, 877 (7th Cir. 2016). Here, Plaintiff's primary Title VII claim—that he was "terminated" from his position at Defendant's Honda dealership—is susceptible to multiple interpretations. One could plausibly argue that Plaintiff alleged a failure to hire: that he submitted an employment packet and, unlike virtually every other employee who did so, he was not hired by Defendant. (*See* Compl. ¶¶ 8, 11-20.) Furthermore, he alleged circumstances that could possibly create an inference of discrimination, namely statements made by Defendant's managers, and its refusal to let him sit in a public location. (*See id.* ¶¶ 13, 15, 18.) Despite some language in his complaint that appears to be contrary to this construction, one could construe the claim in that manner. Plaintiff, however, does not. Plaintiff stresses, early and often in his Opposition, that this is a *termination* case, and *not* a failure to hire case. Although, according to Plaintiff, "Defendant would like to frame this action as an allegation that it did not hire him . . . [Plaintiff] was hired, but then fired in violation of the Act." (Opp'n Mot. Summ. J. at 1.) Plaintiff devotes an entire section of his Opposition to

the topic, titled "**Failure to Hire Claim Not at Issue Here**." (*Id.* at 9-11 (emphasis in the original).) He refers to the contention that Plaintiff was not an employee as a "false narrative," stressing that "Defendant ignores the allegations of the Complaint, again, that Plaintiff was fired." (*Id.* at 11.) The Court will not ignore Plaintiff's exhortations, and this, then, is a termination case. Plaintiff "chose his ground," even if, as will be shown, "it is a legally bad one." *Kozaria*, 840 F.3d at 877.

"It is axiomatic that a plaintiff must allege the existence of an employment relationship in order to state a Title VII claim." *Bender v. Suburban Hosp.*, 998 F. Supp. 631, 634 (D. Md. 1998). This does not *have* to be a current employment relationship. A Title VII plaintiff may be a "potential, current, or past employee of the employer." *Gerner v. Cty. of Chesterfield, Va.*, 674 F.3d 264, 268 (4th Cir. 2012) (quoting *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 374 (2d Cir. 2006)). But, if a plaintiff alleges that the relationship was current, and that the adverse employment action was a discharge, there must be a genuine question of material fact as to whether there was a current employment relationship, and as to whether plaintiff was discharged, in order for the plaintiff to survive summary judgment.

Beyond his own allegations and the bald assertions in his own affidavit, Plaintiff has put forth no evidence that he was employed by Defendant. Among the exhibits attached to his opposition there is no employment contract, no pay stub, no HR documents stating that he was hired by Defendant, not even a piece of stationary or a business card that *suggests*, *possibly* that Plaintiff ever worked for Defendant. The entirety of Plaintiff's discriminatory discharge case rests on the following argument: that, under the terms of the APA, Plaintiff "automatically becam[e]" an employee of Defendant on the date the sale of Northwest Honda to Defendant closed. (Opp'n Mot. Summ. J. at 10.) That argument is unavailing.

The APA states that "Buyer shall *hire* all of Sellers' former employees (except as set forth in this Section 8) *in accordance with Buyer's standard operating and human resources procedures*, including without limitation, passing a drug test." (APA § 8 (emphasis added).) It defines "those individual Buyer hires" as "collectively, the 'Retained Employees.'" (*Id.*) It further states that "Buyer shall have the right, but not the obligation, to employ any or all of Seller's employees related to the Business, and shall have no obligation to retain any Retained Employees for a specific time period following Closing." (*Id.*) This language is incompatible with a scheme where anyone "automatically" becomes an employee. Why would Defendant be required by the APA to "hire" anyone who already works for them? The agreement could have defined "Retained Employees" as, for instance, those employees who were employed by Northwest Honda on the date of closing. Instead, the "Retained Employees" were the employees who Defendant *hired*. The scheme evinced by this contract is apparent: Defendant agreed to *hire* all of Northwest Honda's former employees, so long as they met certain requirements, but this provision did not mean that Defendant *had* to hire anyone, or had to employ anyone for a certain length of time. The APA nowhere states that Plaintiff (or anyone) "automatically" became an employee of Defendant at the time of closing, and such a reality is incompatible with the express terms of the APA.

In fact, such a reality—where employees of Northwest Honda automatically became employees of Defendant—is, if not incompatible, at least inconsistent with Plaintiff's own actions. Plaintiff alleges (and swears) that he and other employees "filed [sic] out employment packets" and repeatedly argues that he applied for a position with Defendant. (Compl. ¶ 8; *see* Mance Aff. ¶ 5 ("I filled out an employment packet, including an application for employment."); Opp'n Mot. Summ J. at 13 ("As stated many times, Plaintiff submitted an application for

employment.").) Why would he, or anyone else, apply for a job if their employment was "automatic"?

"Regardless of the parties' intentions at the time the contract was formed," the Court looks only to the APA to determine its "plain meaning." *Jarallah v. Thompson*, 123 F. Supp. 3d 719, 726 (D. Md. 2015). But still, the Court will briefly note that the purported statements of those close to the deal do not conflict with the Court's interpretation of the APA. For example, according to Plaintiff, Defendant's President told him that he "was not going to make any dramatic changes" and that Plaintiff would "still be manager." (Mance Aff. ¶ 6.) Plaintiff alleged that "[a]s part of the sale . . . it was agreed that certain employees . . . would stay at the dealership and become employees of Defendant." (Compl. ¶ 7.) It seems as though it *was* "part of the sale" that "certain employees" would "become employees of the Defendant." That is, the clear terms of the APA suggest that both parties intended that the employees of Northwest Honda would become employees of Defendant. The President of Defendant could very well have thought Plaintiff would "still be manager." None of that suggests, however, that Plaintiff would "automatically" become an employee or "automatically" become a manager. There were conditions that had to be met in order for an actual hiring to occur (e.g., it seems, passing a drug test). The parties to the APA appeared to have thought that Plaintiff, along with the vast majority of Northwest Honda's employees, would almost certainly become employees of Defendant, but that does not mean that the transformation was automatic.

Under the clear terms of the APA Plaintiff did not become an employee of Defendant automatically upon the sale closing. Plaintiff's inconsistent actions in terms of filling out an employment application, and the consistent purported statements of those familiar with the deal do not overcome that simple fact. Therefore, there is no genuine dispute of fact as to whether

11

Plaintiff was ever employed by Defendant, and there is no need for resolution of this issue by a jury. Because the Court so finds, Plaintiff's discriminatory discharge claim fails as a matter of law and summary judgment will be granted for Defendant.

For the same reason—that Plaintiff has not presented a genuine dispute of material fact in regard to his employment with Defendant—the Court will grant summary judgment to Defendant on Plaintiff's hostile work environment claim, and his state law claim. Plaintiff's state law claim is analyzed under the same law as his federal claim, and thus fails for the same reasons.[7] Plaintiff's hostile work environment claim fails because he never actually worked for Defendant.

In order to succeed on a hostile work environment claim, a plaintiff must show that there was unwelcome, discriminatory conduct "which [was] sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011)). Even if Plaintiff had technically become an "employee" of Defendant when the sale was finalized on July 12, 2016, Plaintiff alleges that he was fired the same day, and never performed any work for Defendant. (*See* Compl. ¶ 13.)[8] It is hard to imagine a hostile *work* environment, replete with "severe and pervasive" unwelcome conduct, when a plaintiff did not work in the environment. Still, taking all alleged unwelcome conduct into consideration, including the comments made by Defendant's Vice President the day *after* Plaintiff was allegedly fired, Plaintiff has, at most, alleged two instances of harassment—John Orofino informing Plaintiff that "they just don't want you as manager," and mocking

---

[7] "The Maryland Court of Appeals has deemed FEPA to be the state law analogue of Title VII," and as the parties "have not alerted the Court to any applicable differences between state and federal law with regard to Plaintiff's claims," the Court will "apply federal standards to both sets of claims." *Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC*, Civ. No. JKB-10-276, 2011 WL 4549177, at *4 n.3 (D. Md. Sept. 28, 2011).

[8] Plaintiff technically alleges that the sale was finalized on July 11, 2016, not July 12, and that he was fired on July 11, not July 12. But Plaintiff later admits that the date in these allegations was incorrect. (*See* Opp'n Mot. Strike 3 n.2, ECF No. 15.)

Plaintiff about where he would sit, and Defendant's Vice President doing essentially the same thing.[9] Although a few remarks *could* potentially create a hostile work environment—it "is not . . . a mathematically precise test"—the two instances alleged by the Plaintiff here simply do not add up to severe or pervasive conduct. *Boyer-Liberto*, 786 F.3d at 277 (internal quotation marks omitted).

### b. *Motions to Strike and for Leave to File Surreply*

Defendant moved to strike an affidavit attached to Plaintiff's opposition to its motion for summary judgment, and Plaintiff moved for leave to file a surreply in opposition to that motion to strike. The Court has not considered the substance of the contested affidavit in ruling on the motion for summary judgment, and consideration of that contested affidavit would not affect its ruling. Summary judgment is granted for Defendant primarily because the APA did not automatically make Plaintiff an employee of Defendant; there is nothing beyond the clear terms of the APA, and therefore nothing contained in Mr. Dreiband's affidavit, that would change that conclusion. Therefore, Defendant's motion to strike will be denied as moot, as will Plaintiff's motion for leave to file a surreply.

Too much time has been consumed in the litigation surrounding this affidavit, and the Court does not wish to expend even more, but it will briefly highlight a few issues. First, Defendant's efforts to strike the entirety of this affidavit border on the frivolous. Defendant moved to strike *the entire* affidavit "[p]rimarily" because Mr. Dreiband, according to Defendant, sought "to give certain opinions and legal conclusions regarding the Asset Purchase Agreement." (Mot. Strike Mem. Supp. 3, ECF No. 14-1.) Surely Mr. Dreiband's statement that he "was an owner and operator at Driftwood, Inc. ("Driftwood") doing business as Northwest Honda, and

---

[9] Plaintiff alleges that Mr. Orofino made other racially insensitive remarks, but specifically alleged that this occurred "[p]rior to the finalization of the sale of the dealership . . . . [d]uring [Orofino's] previous time working for Northwest Management." (Compl. ¶ 12.)

had been in that position since approximately January 2002," is not an impermissible legal conclusion, yet Defendant would have the Court strike such an innocuous statement. (*See* Dreiband Aff. ¶ 1.) Defendant further argues that Mr. Dreiband could not have any personal knowledge of the terms of the APA and therefore the Court should strike any statements Mr. Dreiband made regarding it. To demonstrate this purported lack of personal knowledge, Defendant provided an affidavit by the person who, according to Defendant, *did* have such personal knowledge: Mr. Dreiband's *own father and business partner.* Does Defendant actually suggest that the co-owner of the Seller under the APA and the son of the man who signed the APA could not *possibly* have any understanding of the intention of the parties signing it, such that his statements should be stricken from the record? Mr. Dreiband did not make impermissible legal conclusions about the meaning of the APA (he does not mention the APA in his affidavit). He made statements regarding what he thought was the intention of Northwest Honda and Defendant; a subject that, as co-owner of Northwest Honda, he likely knew well. (*See* Dreiband Aff. ¶ 3.) Furthermore, *according to Defendant's own legal argument* (which, by the way, was correct) even if Mr. Dreiband had discussed the terms of the APA, Mr. Dreiband's understanding of the APA is largely immaterial; the document speaks for itself.[10] Defendant's indiscriminate and largely unfounded motion to strike that so delayed the resolution of this case essentially amounts to this: Defendant disagrees with what Mr. Dreiband had to say, and therefore the Court must strike it from the record. That is not the standard for a motion to strike.

Second, beyond Defendant's distaste for Mr. Dreiband's commentary, it is perhaps more important that Mr. Dreiband himself did not like what he had to say either. According to Mr.

---

[10] Defendant did not feel the need to move to strike any portion of Plaintiff's own affidavit, and he too stated that "it was agreed by Driftwood and Defendant some employees would stay at the dealership." (Mance Aff. ¶ 2.) The Court is unclear as to why this statement is not, in the eyes of the Defendant, an impermissible legal opinion or a statement made without personal knowledge, but essentially the same statement made by an owner of Driftwood is.

14

Dreiband, Plaintiff's counsel solicited Mr. Dreiband's signature for an affidavit and submitted to the Court an affidavit attributed to him, all without actually confirming that Mr. Dreiband approved the substance of that affidavit. That is troubling. What's more, after Mr. Dreiband corrected his original affidavit and signed it on January 4, 2018, Plaintiff waited fifteen days to correct the record, filing the amended affidavit simultaneously with his opposition to Defendant's motion to strike. The Court will assume that that Mr. Dreiband's statements about Plaintiff's counsel's conduct are not the full story, and that her delay in filing the corrected affidavit was the result of understandable oversight, and not that she was willing to leave Mr. Dreiband's incorrect affidavit[11] on the record until Defendant's motion to strike forced her hand. The alternative is to assume that Plaintiff's counsel engaged in conduct that falls far below the standards for attorneys that practice in this district.

Both parties' counsel did not comport themselves according to that standard in the litigation of this case. In addition to the issues described above, both parties strayed from the goal of committed and passionate advocacy within the boundaries of collegial discourse. (For example, Plaintiff, on the first page of his opposition, accused Defendant of destroying evidence.) Such conduct did not advance the parties' causes, and it served to delay the resolution of this case for weeks, if not months.

## IV. *Conclusion*

Plaintiff has presented no evidence that he was employed by Defendant and therefore no evidence that Defendant fired him, or that he worked for Defendant in a hostile work environment. Plaintiff's state law claim is analyzed under the same law as Plaintiff's federal law claims. Accordingly, summary judgment will be granted for Defendant on all counts.

---

[11] Incorrect according to Mr. Dreiband. The Court makes no conclusions as to the veracity of any claims Mr. Dreiband makes in either his original affidavit or amended affidavit.

Defendant's motion to strike and Plaintiff's motion for leave to file a surreply will be denied as moot. An order shall issue accompanying this memorandum and setting forth this disposition.

DATED this 19th day of April, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge